UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KEVIN JONES, )
)
       Petitioner, )
) Case No. 3:10-CV-483 JD
v. )
)
SUPERINTENDENT, )
)
       Respondent. )

OPINION AND ORDER

Kevin Jones, a *pro se* prisoner, is serving an aggregate 30-year sentence for dealing in cocaine, conspiracy to deal in cocaine, and other drug offenses committed in Daviess County. *State v. Jones*, No. 14D01-0804-FA-302. He filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [DE 1].

In deciding the petition, the court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Jones's burden to rebut this presumption with clear and convincing evidence. *Id*. On direct appeal, the Indiana Court of Appeals summarized the facts underlying Jones's offenses as follows:

> During the summer of 2007, the Daviess County police department began hearing about a drug dealer named "Green Dog." During that summer, Darrell Pryor was arrested for selling methamphetamine. Pryor told police he got the methamphetamine and also bought cocaine from Green Dog. In January 2008, a friend of Leanne Tribby's was arrested for an existing methamphetamine-related charge while at her apartment. The police told Tribby that she could also be charged. Thereafter, Tribby agreed to work as a confidential informant for the police. Tribby told police she regularly purchased cocaine from Green Dog. At the time, neither Pryor nor Tribby knew Green Dog's real name, but both subsequently identified Jones as Green Dog.
>
> With Tribby acting as a confidential informant, the police conducted three controlled buys in which Tribby purchased cocaine from Green Dog under police surveillance. The first buy took place on February 14, 2008. Tribby purchased $250

worth of cocaine from Green Dog outside a CVS in Daviess County. During the second buy on March 13, 2008, Tribby purchased $90 worth of cocaine from Green Dog at 918 Jersey Street in Daviess County.

The third controlled buy took place on April 4, 2008. Sometime during the afternoon on April 4, 2008, police observed Tribby leaving 918 Jersey Street and pulled her over. Tribby agreed to take part in a controlled buy from Green Dog that evening. Under police surveillance, Tribby called Green Dog at 8:28 p.m. and asked if she could buy $100 worth of crack cocaine. The police gave Tribby a marked $100 bill. Tribby went back to 918 Jersey Street and gave the marked $100 bill to Green Dog in exchange for cocaine. Tribby told police to check out the garage. The police began the process of obtaining a search warrant for 918 Jersey Street, and in the meantime continued observing the house. Around 11:30 p.m., police witnessed a man leave 918 Jersey Street on a moped. They pulled the man over, and the man identified himself as Kevin Jones. Jones denied being Green Dog. Jones was searched and found to be carrying two cell phones and $1,200, including the marked $100 dollar bill. The police called the number that Tribby had called at 8:28 p.m. to initiate the buy, and one of Jones's cell phones rang.

In executing the search warrant at 918 Jersey Street, officers found approximately thirty-six grams of cocaine in a clear plastic bag that was placed on a piece of siding suspended from the rafters of the detached garage next to the house. The cocaine was divided into smaller, clear, individual bags inside the larger bag. In the house the police found digital scales and three cell phones, one of which had the same number Tribby had called during the February and March controlled buys. The police found marijuana in a bedroom later identified as Jones's. In that bedroom the police also found a Bible bearing the name of Kevin Jones, his Tennessee identification card, and an Illinois traffic citation issued to Kevin Jones.

Jones gave a statement to police early the next morning. Jones admitted the marijuana was his. Jones twice denied being Green Dog, denied ever dealing cocaine, and claimed the money he was carrying came from his house in Mississippi. The police recorded a subsequent conversation in which Jones phoned his wife from jail and identified himself as Green Dog.

On April 9, 2008 the State charged Jones with ten counts: (1) dealing in cocaine, a Class B felony; (2) conspiracy to deal cocaine, a Class A felony; (3) dealing in cocaine, a Class A felony; (4)-(5) dealing in cocaine, both Class B felonies; (6)-(7) possession of a controlled substance, both Class D felonies; (8) maintaining a common nuisance, a Class D felony; (9) possession of marijuana, a Class A misdemeanor; and (10) possession of paraphernalia, a Class B misdemeanor.

A jury trial was conducted on November 19–21, 2008. Jennifer Tedford testified that she leased the residence at 918 Jersey Street. Tedford met Jones

sometime around the summer of 2007 through a mutual friend. Jones told Tedford he was interested in leaving his current residence. Thereafter, Jones began living with Tedford at 918 Jersey Street. Tedford testified she had an agreement with Jones by which Jones would live at her house and sell drugs and in return Jones would pay rent to Tedford. Jones never paid Tedford any money for rent but did give her methamphetamine at least twice. Jones had a key to the house. His bedroom was five to ten feet from the garage, and he kept his moped just outside the back of the garage. Tedford saw approximately fifteen to twenty people coming and going from the house on a daily basis. The traffic would stop when Jones went out of town. Tedford personally witnessed Jones give cocaine to one person. On one occasion Tedford saw large amounts of cocaine and methamphetamine on a table in Jones's room. Tedford told Jones not to keep any drugs in the house, instead asking him to keep the drugs in his moped or on his person.

Also at trial, Pryor testified he purchased crack cocaine from Jones 100 times or more at a variety of locations including 918 Jersey Street. Tribby estimated the number [of] times she purchased cocaine from Jones to be "[t]housands probably." Tribby testified her purchases were made at a variety of locations including 918 Jersey Street. Although the police did not know the identity of Green Dog when they conducted the controlled buys, the police subsequently identified Jones as the man who sold drugs during each controlled buy.

*Jones v. State*, 916 N.E.2d 312, 2009 WL 37119612, at *1-2 (Ind. Ct. App. Nov. 6, 2009).

Jones was found guilty on Counts 1-5 and 8-9, and was sentenced to an aggregate term of 30 years in prison. *Id*. at *2. He appealed, claiming that the evidence was insufficient to support his convictions for dealing in cocaine and conspiracy to deal cocaine. *Id.* at *3-7. The Indiana Court of Appeals affirmed. *Id.* Jones sought review in the Indiana Supreme Court [DE 8-6], but his petition to transfer was denied [DE 8-2 at 3]. Thereafter, Jones filed this federal petition raising the same sufficiency of the evidence claims he raised on direct appeal [DE 1].

Jones's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or

3

treaties of the United States." 28 U.S.C. § 2254(a). The court can grant an application for habeas relief if it meets the requirements of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is "contrary to" federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court or reaches an opposite result in a case involving facts materially indistinguishable from relevant Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively" unreasonable. *Id.* "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 555 U.S.—, 131 S. Ct. 770, 786 (2011).

Both of Jones's claims are premised on the sufficiency of the evidence presented at trial [DE 1 at 3]. Under the Due Process Clause, a defendant cannot be convicted unless the state proves all the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). However, "[a] party challenging the sufficiency of the evidence supporting a jury conviction faces a steep uphill battle." *United States v. Moore*, 425 F.3d 1061, 1072 (7th Cir. 2005). When considering a sufficiency of the evidence claim, the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). In making this determination, the court is not permitted to reweigh the evidence or substitute its judgment for that of the finder of fact. *Id.*; *Ford v. Ahitow*, 104 F.3d 926, 939 (7th Cir. 1997).

Jones first claims that the evidence was insufficient to convict him of dealing in cocaine [DE 1 at 3]. Specifically, he claims that there was insufficient evidence of his constructive possession of the drugs found in the garage, because the door to the garage did not lock and numerous people would have had access to it. [*Id.*; DE 13-1 at 1-2]. In rejecting this claim, the Indiana Court of Appeals applied a standard that was consistent with *Jackson* and determined that there was sufficient evidence to support Jones's conviction.[1] *See Jones*, 916 N.E.2d 312, 2009 WL 37119612, at *3. Based on the record, this was not an unreasonable application of *Jackson*.

---

[1] The court encapsulated the standard of review as follows: "It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction . . . Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Jones*, 916 N.E.2d 312, 2009 WL 37119612, at *3. The court did not cite *Jackson*, but a state court need not cite to or even be aware of Supreme Court precedents "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

To convict Jones of dealing in cocaine, the state was required to prove beyond a reasonable doubt that he knowingly possessed with intent to deliver an amount of cocaine weighing three grams or more. IND. CODE § 35–48–4–1(a)(2), (b)(1). Under Indiana law, the possession element may be supported by proof of actual or constructive possession. *Whitney v. State*, 726 N.E.2d 823, 825 (Ind. Ct. App. 2000). Constructive possession, in turn, requires proof of the capability and intent to maintain dominion and control over the contraband. *Hardister v. State*, 849 N.E.2d 563, 573 (Ind. 2006). Proof of the defendant's possessory interest in a residence where the contraband is found is adequate to establish capability. *Jones v. State*, 807 N.E.2d 58, 66 (Ind. Ct. App. 2004) ("A house or apartment used as a residence is controlled by the person who lives in it, and that person may be found in control of any drugs discovered therein, whether he is the owner, tenant, or merely an invitee."). The intent element is established when the state proves the defendant had knowledge of the presence of contraband. *Goliday v. State*, 708 N.E.2d 4, 6 (Ind. 1999). "This knowledge may be inferred from either the exclusive dominion and control over the premise containing the contraband or, if the control is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband." *Id.* (internal quotations and citation omitted). Such additional circumstances may include: "(1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the drugs or weapons; (5) drugs or weapons in plain view; and (6) location of the drugs or weapons in close proximity to items owned by the defendant." *Hardister*, 849 N.E.2d at 574.

Here, the record contains substantial evidence supporting Jones's conviction for dealing in cocaine. Specifically, the evidence showed that police knew someone named Green Dog was dealing drugs out of the residence at 918 Jersey Street. Under police surveillance, a confidential informant

made two controlled buys from Green Dog at that location. Jones was subsequently found to be in possession of a $100 marked bill used by the confidential informant, as well as the cell phone that the informant called to set up the buy. In statements to police, Jones denied being Green Dog, but during a subsequent phone call to his wife from jail, he identified himself as Green Dog. At trial, evidence was presented that Jones had been living at 918 Jersey Street for about six months, had a key to the house, and had a bedroom that was between five and ten feet from the garage. He kept his moped outside the back door of the garage, and police observed him leaving the house on his moped the night of his arrest. Jones's roommate testified that she saw him in possession of a large amount of cocaine and other drugs in his bedroom and told him to keep the drugs somewhere outside of the house. *See Jones*, 916 N.E.2d 312, 2009 WL 37119612, at *1-2. Viewing this evidence in the light most favorable to the prosecution, it was more than sufficient to support the jury's determination that Jones had constructive possession of the drugs found in the garage. The state court's rejection of Jones's claim was not unreasonable, and accordingly, the claim is denied.

Jones's remaining claim is that there was insufficient evidence to convict him of conspiracy to deal in cocaine [DE 1 at 3]. Specifically, he asserts that there was no agreement between him and Tedford for him to deal drugs [*Id.*; DE 13-1 at 3-4]. The Indiana Court of Appeals rejected this claim. *Jones*, 916 N.E.2d 312, 2009 WL 37119612, at *3-5. Based on the record, this was not an unreasonable application of *Jackson*.

To convict Jones of conspiracy to deal in cocaine, the state was required to prove beyond a reasonable doubt that he conspired with another person to commit the crime of dealing in cocaine with the intent to commit that crime. IND. CODE § 35–41–5–2(a); IND. CODE § 35-48-4-1.The state was not required to present evidence of an express agreement. *Drakulich v. State*, 877 N.E.2d 525,

532 (Ind. Ct. App. 2007). Rather, "[i]t is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to commit the offense." *Id.* The agreement may be shown by either direct or circumstantial evidence, "including the acts of the parties to the agreement." *Id.* The state was also required to prove that either Jones or Tedford performed an overt act in furtherance of the conspiracy. IND. CODE § 35–41–5–2(b).

Here, the record contains substantial evidence of a conspiracy between Tedford and Jones. Tedford testified that she and Jones had an agreement whereby he could live at her house and deal drugs and in return he would pay some rent. Jones had a key to the house and maintained a bedroom there. Although Jones never actually paid any rent, he did give Tedford drugs at least twice in exchange for their housing arrangement. On one occasion, Tedford saw Jones with a large amount of cocaine and other drugs on a table in his room. Tedford personally witnessed Jones give cocaine to one person, and witnessed between fifteen and twenty people coming and going from the house on a daily basis. Pryor and Tribby testified to having purchased cocaine from Jones hundreds of times at a variety of locations, including 918 Jersey Street. Tedford herself pled guilty to conspiracy and admitted conspiring to deal cocaine with Jones. *See Jones*, 916 N.E.2d 312, 2009 WL 37119612, at *1-2. Notwithstanding this evidence, Jones points out that Tedford asked him not to keep drugs in the house, which he believes is "contrary to the behavior of a conspirator" [DE 13-1 at 3-4]. However, as the Indiana Court of Appeals noted, "[i]f anything, the fact that Tedford asked Jones not to keep drugs in the house and he complied further supports the existence of a conspiracy." *See Jones*, 916 N.E.2d 312, 2009 WL 37119612, at *6. At this stage the court must construe the evidence in the light most favorable to the prosecution, and in doing so the court finds the evidence

more than sufficient to support the jury's verdict. The state court's rejection of Jones's claim was not an unreasonable application of *Jackson*, and accordingly, the claim is denied.

As a final matter, pursuant to RULE 11 of the RULES GOVERNING SECTION 2254 CASES, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons fully explained above, Jones has not made a substantial showing of the denial of a constitutional right, nor could jurists of reason debate the outcome of the petition or find a reason to encourage Jones to proceed further. Accordingly, the court declines to issue Jones a certificate of appealability.

For the reasons set forth above, the court DENIES the petition [DE 1] and DENIES the petitioner a certificate of appealability.

SO ORDERED.

ENTERED:  July 14, 2011

                                                /s/ JON E. DEGUILIO
Judge
United States District Court